**MEMO ENDORSED**



**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

David Z. Pinsky

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T  +1 212 841 1177
dpinsky@cov.com

*By ECF*

February 3, 2020

Hon. Valerie E. Caproni
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square, Room 240
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   2/7/2020

    Re:    *In re Application of Aenergy, S.A. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 19-mc-00542-VEC

Dear Judge Caproni:

    We write on behalf of respondent General Electric Company ("GE") in the above action to respectfully request that the Court order petitioner Aenergy, S.A. ("AE") to produce a copy of the appellate papers that it filed in the Angolan Supreme Court on January 13, 2020, pursuant to the Court's broad discretion to manage discovery under Federal Rule of Civil Procedure 26(b).

    AE has refused to provide a copy of its appellate papers to GE despite the fact that AE's Angolan appeal is *the factual predicate* upon which this Section 1782 action and the resulting document and deposition subpoenas are based. Section 1782 allows a petitioner to seek discovery "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. Although the foreign proceeding need not be filed at the time a petitioner commences its Section 1782 action, the foreign proceeding is nonetheless *the* essential element of the action. AE acknowledged as much in its application to this Court. *See* AE's Memorandum of Law in Support of Ex Parte Application, ECF No. 3 ("AE Mem."), at 7 (citing *Mees v. Buiter*, 783 F.3d 291, 297 (2d Cir. 2015)). Here, that essential element is AE's Angolan appeal.

    As of the dates on which AE filed its Section 1782 application (November 22, 2019) and served GE with document and deposition subpoenas (November 25, 2019), AE's appeal to the Angolan Supreme Court was merely "contemplated." AE Mem., at 9. Since that time, GE has produced thousands of documents to AE for use in that appeal. As of today's date, however, AE's Angolan appeal is no longer merely "contemplated" but rather *filed* with the Angolan court.

    Since January 13, 2020, when AE filed its appeal, AE has requested that GE produce additional documents outside the scope of what GE previously agreed to provide and outside the scope of what this Court previously ordered GE to produce. These requests include:

- that GE add two custodians, Jaime Morais and Paolo Marone,[1] to the 13 custodians whom GE and AE previously agreed would comprise the custodians from whom GE would collect and review electronically stored information, or ESI;

- that GE produce 25 new metadata fields for all of the documents that GE has produced to AE, on top of the 22 metadata fields that GE and AE previously agreed;

- that GE conduct a forensic investigation of electronic devices previously used by Wilson da Costa, the former head of its business in Angola, for information related to the GAMEK document and the parent company guarantee;

- that GE produce responsive data from mobile devices used by additional custodians, whereas previously GE and AE agreed that GE would produce such data only from Mr. da Costa's mobile device; and

- that GE produce *all* documents dated October 12, 2017, from the custodial files of Mr. da Costa, including *nonresponsive* documents.

GE wishes to emphasize that it has not refused to produce the above documents to AE. Instead, as part of the meet-and-confer process—which remains ongoing and in which GE has reserved all rights—GE has simply asked that AE share a copy of its Angolan appeal in order for GE to better understand the subject matter of the appeal and the relevance of the documents and information that AE claims to need. As this Court held, "AE bears the burden of showing that the discovery it seeks will serve some purpose in its [then] contemplated [and now filed] litigation." January 3, 2020 Tr. at 85:8-11 (Caproni, D.J.) (citing *In re Accent Delight International Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017)).

GE respectfully requests that the Court order that AE produce to GE the appellate papers that AE filed with the Angolan Supreme Court on January 13, 2020, to allow GE to understand the specific nature of AE's now-filed appeal, to facilitate ongoing discussions about GE's document production obligations, and to facilitate preparation for the Rule 30(b)(6) deposition that AE continues to seek. GE's request is based upon the Court's "broad discretion to manage the manner in which discovery proceeds" under Rule 26(b), which governs the management of discovery under Section 1782. *In re Sveaas*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008). Additionally, as the Second Circuit has recognized, Section 1782 "invest[s] . . . broad discretion in the district courts as an invitation for district judges to fashion *creative means* of implementing" the

---

[1] Although GE offered on December 20, 2019, to include Mr. Morais as a custodian in exchange for certain concessions from AE, including AE withdrawing its request that GE include Mr. Marone as a custodian, AE did not accept GE's compromise offer. *See* Dkt. No. 27-6 (Exhibit 6 to Danner Declaration in Opposition to Respondent's Motions to Quash and for a Protective Order) at 1-2. Since that date, GE has been clear in communications to AE that GE had agreed only to 13 custodians, a set that does not include Mr. Morais. *See e.g.,* Dkt. No. 25 (Mem. of Law in Support of Respondent General Electric Co.'s Motion to Quash in Part and for a Protective Order) at 7; Dkt. No. 23 (Pinsky Decl.) at ¶¶ 18-19.

statute's goals, one of which is "promoting efficiency in international litigation." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995) (emphasis added).

A district court's broad discretion includes the ability "*to impose conditions* that it deems appropriate in granting discovery in connection with a foreign proceeding under 28 U.S.C § 1782." *Application of Consorcio Minero, S.A. v. Renco Group, Inc.*, 2012 WL 1059916, at *3 (S.D.N.Y. Mar. 29, 2012) (emphasis added); *see also* S. Rep. No. 1580, reprinted in 1964 U.S.C.C.A.N. 3782, 3788 (1964) (explaining that a district court "may impose conditions it deems desirable" in Section 1782 actions). Moreover, "[c]onsistently, the Second Circuit and the Supreme Court have suggested that a district court could condition relief [under Section 1782] upon *a reciprocal exchange of information*, as such would lend parity to the disclosure mix," including through grants of reciprocal discovery that go far beyond what GE seeks here. *Minatec Finance S.A.R.L. v. SI Group Inc.*, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008) (emphasis added) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 (2004), and *In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996)); *see also Consorcio Minero*, 2012 WL 1059916, at *4 (granting reciprocal discovery in a Section 1782 action where the petitioner was not found in any district in the United States and where the respondent had a "substantial interest" in the underlying foreign proceeding). In contrast to the broad reciprocal discovery afforded in these cases, GE requests only a single filing that AE has itself put at issue.

With AE's appeal now filed with the Angolan Supreme Court, there is no reason for the parties to meet and confer as to what AE *might* need or what AE *could* use in that proceeding. Rather, the parties' discussions should now move from the realm of the contemplated to the realm of the actual. To the extent that AE's position is that its appellate papers have no bearing on the scope of the additional discovery it seeks because AE may "supplement" its appeal, that position is difficult to credit. Common sense dictates that AE's ability to "supplement" its filing is not wholly unbound but instead must bear some relationship to AE's original papers. In any event, it is common practice for a party seeking discovery under Section 1782 to provide copies of filings from the foreign litigation at issue. *See, e.g.*, *Minatec Finance v. SI Group, Inc.*, 1:08-cv-00269 at ECF No. 1-3 (foreign complaint submitted with initial 1782 application); *RSM Prod. Corp. v. Noble Energy, Inc.*, 357 F. Supp. 3d 592, 594 (S.D. Tex. 2019) (noting that plaintiff voluntarily provided pleadings from the foreign litigation after 1782 relief was initially granted).

AE has no legitimate basis to refuse to share its Angolan appeal with GE. AE's appellate papers are not privileged or proprietary or subject to other protection from disclosure. AE's apparent objection that its appeal might support a narrower scope of relevance suggests that AE deliberately favors vagueness over clarity in order to unduly and inappropriately expand the scope of GE's production. GE seeks only a better understanding of the subject matter of the appeal, to provide AE the discovery that it needs, and bring this matter to a conclusion.

Respectfully,

David Z. Pinsky

cc: All Counsel of Record (*by ECF*)

Application DENIED.  The Court does not have authority to compel AE to produce the appellate papers filed with the Angolan Supreme Court.  GE cites to the broad discretion that Federal Rule of Civil Procedure ("Rule") 26(b) affords courts when managing discovery in a 28 U.S.C. § 1782 proceeding.   But discretion to compel discovery extends to the discovery obligations that the subpoenaed party is already under, not to the petitioner, who is under no such obligation, unlike the adverse parties in a civil action.  *See In re Sveaas*, 249 F.R.D. 96, 98, 108 (S.D.N.Y. 2008).  Here, GE is obliged to produce relevant documents in accordance with the subpoena this Court issued and in accordance with this Court's subsequent ruling on the motion to quash that subpoena.  Rule 26(b) does not allow this Court to convert a Section 1782 proceeding into a civil action with new discovery obligations imposed upon the subpoenaing party.

GE's cited cases support only the rule that a court may require reciprocal discovery at the outset as a condition to granting the Section 1782 application.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 (2004); *Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996); *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008).  Although one of those cases was decided on a motion "to modify the [o]rder" compelling Section 1782 discovery, that case does not support GE's position.  *See Application of Consorcio Minero, S.A. v. Renco Grp., Inc.*, 2012 WL 1059916, at *1 (S.D.N.Y. Mar. 29, 2012).  The *Consorcio* court ordered reciprocal discovery because the respondent had an interest in the subject foreign actions as a party to one of those actions and as the owner of the parties to the other actions for which the petitioner sought discovery.  *Id.* at *4.  The respondent, despite being a party, had not received any discovery from the petitioner or its affiliates in the United States in aid of defending itself in those actions.  *Id.*  The court thus ordered reciprocal discovery; in effect, granting the respondent a new Section 1782 subpoena pursuant to the the statute's underlying justifications because the respondent had no option to seek its own Section 1782 subpoena against the petitioner, a foreign company.  *Id.*  Contrary to *Consorcio*, GE is not a party (although, as this Court has stated, it is an interested non-party) to the Angolan proceedings, and it is not seeking discovery for aid in a foreign proceeding: the central purpose of Section 1782.  This Court thus declines to extend GE's cited cases to the instant application.

Although neither party has raised this argument, the Court is also concerned with issues of comity.  GE asks this Court to compel AE to produce appellate filings submitted to a foreign court.  The Angolan Supreme Court has an institutional interest in who can access those filings and under what circumstances.  It is conceivable that an order from this Court compelling AE would be met by resistance from the Angolan Supreme Court ordering AE not to comply.  Assuming, *arguendo*, this Court had authority, it would likely decline to risk putting itself and AE in such a quandary.

SO ORDERED.

*[signature]* 2/7/2020

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE