USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/3/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
IN RE APPLICATION OF AENERGY, S.A. FOR : 19-MC-542 (VEC)
AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO :
CONDUCT DISCOVERY FOR USE IN A : MEMORANDUM
FOREIGN PROCEEDING : OPINION AND ORDER
:
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

     Applicant Aenergy, S.A. ("AE") has sought non-party discovery pursuant to 28 U.S.C. § 1782 from General Electric Co. ("GE") in aid of foreign litigation in Angola. *See* Order (Dkt. 5). In 2016 and 2017, AE acquired 14 turbines from two GE affiliates and entered into several contracts with the government of Angola to build power plants; the contracts obligated Angola to purchase a number of turbines from AE. Angola also entered into a $1.1 billion credit facility agreement with a third GE affiliate to finance its contracts with AE. In January 2019, however, Angola notified AE that it was cancelling the contracts; Angola believed that certain letters committing Angola to purchasing four additional turbines (in addition to an original eight) were forgeries. Since filing the Section 1782 application, AE has taken the position that the former CEO of GE's Angola business, Wilson da Costa, forged the letters.

     The Court ruled orally on GE's motion to quash on January 3, 2020, granting it in part. Although GE's productions are now substantially complete, disputes over privilege remain. AE has moved to compel production of three documents that GE clawed-back pursuant to a protective order entered on January 7, 2020. Mot. (Dkt. 52). AE also seeks to compel GE to produce all documents withheld on the basis of privilege, arguing that GE's privilege log is deficient and fails to satisfy GE's burden to show that documents were rightfully withheld. AE's motion presents straightforward questions of attorney-client privilege and a more complicated

question of remedy. The Court presumes familiarity with the remaining background facts of this matter. For the following reasons, AE's motion to compel is GRANTED in part.

## DISCUSSION

The party asserting attorney-client privilege bears the burden of establishing the privilege's "essential elements"—that the communications at issue were "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)).

While considering that the purpose of the attorney-client privilege is "to encourage attorneys and their clients to communicate fully and frankly," a court must "construe the privilege narrowly because it renders relevant information undiscoverable" and "apply it 'only where necessary to achieve its purpose.'" *Cty. of Erie*, 473 F.3d at 418 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) and *Fisher v. United States*, 425 U.S. 391, 403 (1976)). As such, a court must evaluate "whether the predominant purpose of the communication is to render or solicit legal advice"; to wit "the interpretation and application of legal principles to guide future conduct or to assess past conduct," which "requires a lawyer to rely on legal education and experience to inform judgment." *Id.* at 419–20 (citation omitted). A court must assess the communication "dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting legal authorities and advice that can be given by a non-lawyer." *Id.* at 420–21.

### I. The Withheld Emails

GE has clawed back three email threads that it had produced to AE, asserting that they are attorney-client privileged communications that were mistakenly produced. Those emails were sent in late 2018 and early 2019 and each relates to the then-emerging dispute with Angola

over the alleged purchase of four additional turbines. A mix of corporate business and legal officers participated in the emails. To meet its burden, GE has submitted a declaration by Elisee Sezan, CEO of GE Gas Power Systems & Power Services, Sub-Saharan Africa. *See* Sezan Decl. (Dkt. 56) ¶ 2. GE otherwise relies on the content of the email threads themselves.

The Court finds that GE has not even come close to meeting its burden of showing that the clawed-back emails are protected by the attorney-client privilege.

### A. The December 20, 2018, Email

The first email thread concludes with an email sent by Sezan on December 20, 2018. *See* Danner Decl. (Dkt. 54) Ex. 9. The thread begins with an email from AE's lawyer to GE's in-house counsel and a second GE employee about a meeting at which Angolan officials raised the issue of the four additional turbines. The GE employee forwarded the email to a group of GE employees, and Wilson da Costa, a GE business person, responded with a short summary of the meeting and a request to a GE lawyer, Nelia Dias, who had attended the meeting, to "please opine here." Sezan, not Dias, responded, summarizing a different meeting, planning a third meeting, and copying another GE in-house attorney, Adesua Dozie.

GE has not shown that the predominant purpose of any of the communications was to give or seek legal advice. GE argues that the email thread contains two requests for legal advice: da Costa's request to Dias to "opine here" and Sezan's copying Dozie on his response. *See* GE's Opp. (Dkt. 57) at 16–17. The Court disagrees. "[I]n light of the two hats often worn by in-house lawyers, communications between a corporation's employees and its in-house counsel though subject to the attorney-client privilege must be scrutinized carefully to determine whether the predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice." *Pearlstein v. BlackBerry Ltd.*, No. 13-CV-7060, 2019 WL 1259382, at *4 (S.D.N.Y. Mar. 19, 2019) (citing *Cty. of Erie*, 473 F.3d at 418 and *In re*

3

*Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1036–37 (2d Cir. 1984)); *see also Bank Brussells Lambert v. Credit Lyonnais (Suisse)*, 220 F. Supp. 2d 283, 286 (S.D.N.Y. 2002) ("[t]here is . . . a concern that in-house attorneys are more likely to mix legal and business functions."). Here, GE employees were summarizing past meetings and planning a third. Although those meetings might have entailed discussions of issues as to which GE had (or still has) legal exposure, there is no evidence that obtaining legal advice was the impetus behind either da Costa's request or Sezan's email. *See Fisher*, 425 U.S. at 403 ("[The privilege] protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.").

First, da Costa, just before asking Dias to "opine here," wrote that "luckily [Dias] was in the meeting." It is just as or more likely that da Costa was asking Dias to offer a factual summary of the meeting as it is that he was asking for legal advice, and GE does not contend that a factual summary of the meeting would have constituted legal advice. *See Ames v. Black Entm't Television*, No. 98-CV-226, 1998 WL 812051, at *8 (S.D.N.Y. Nov. 18, 1998) ("[T]he company [must show] that the in-house attorney gave advice in her legal capacity, not in her capacity as a business advisor." (quotation omitted)); *see also Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, No. 01-CV-8854, 2006 WL 1004472, at *6 (S.D.N.Y. Apr. 18, 2006) ("Where there are several possible interpretations of a document based upon the surrounding circumstances, the party asserting the privilege must produce evidence sufficient to satisfy a court that legal, not business, advice is being sought." (citation omitted)).

Second, Sezan asserted in his declaration that he "deliberately copied Ms. Dozie . . . in order to seek her legal advice regarding the issues raised in the communication from AE's lawyer, and to better understand the legal situation with respect to AE's communication and to receive advice on our response." Sezan Decl. ¶ 8. Sezan's declaration falls short of showing that

seeking legal advice was the *predominant* purpose of his email and is notable for what it omits. Sezan does not declare that he sent the email to obtain legal advice, only that he copied Dozie to that end. Nor does Sezan declare that he ultimately received legal advice from Dozie, as he does with the December 31, 2018, email.[1] *See id.* ¶ 9. Although a request for legal advice need not be explicit, because information is frequently sent to in-house corporate counsel in order to keep them apprised of ongoing business developments, the implied request for advice must still be the primary reason for the communication in order for the privilege to attach. *In re Buspirone Antitrust Litig.*, 211 F.R.D. 249, 252–54 (S.D.N.Y.2002) (quoting *In re Pfizer Inc. Sec. Litig.*, No. 90-CV-1260, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993)); *cf. United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 206, 213 (S.D.N.Y. 1974) ("If the document was prepared for purposes of simultaneous review by legal and non-legal personnel, it cannot be said that the primary purpose of the document is to secure legal advice."). At best, GE has shown that Sezan's implied request for legal advice was an afterthought.

### B. The December 31, 2018, Email

In the second clawed-back email thread, Ricardo Machado, AE's CEO, sent an email and an attached letter expressing concern about the growing dispute with Angola to the CEO of GE's gas power business, Scott Strazik, who then forwarded the email to Sezan. *See* Danner Decl. Ex. 12. Sezan responded to Strazik and added da Costa to the email string; both da Costa and Strazik are business officers. Strazik asked a series of questions, mostly related to the accounting treatment of the fourteen turbines AE had acquired from GE. Sezan forwarded the questions to other GE employees, including Dozie, to obtain answers to Strazik's questions. GE again

---

[1] A request for legal advice, standing alone, can certainly be privileged in the absence of a response; but, here, such silence considered alongside Dozie's response with respect to the next issue is evidence that Sezan's purported request for advice was tangential.

asserts, supported by Sezan's declaration, that copying Dozie on the email thread was a request for legal advice. GE's Opp. at 17–18; *see* Sezan Decl. ¶ 9.

This email thread is plainly devoid of any request for legal advice. Each request is directed to a non-legal GE employee, and in-house counsel does not once weigh in. *See Medina v. Buther*, No. 15-CV-1955, 2018 WL 4383098, at *3 (S.D.N.Y. Aug. 22, 2018) ("Where, as here, 'non-legal personnel are asked to provide a response to a matter raised in a document, it cannot be said that the "primary" purpose of the document is to seek legal advice.'" (quoting *Urban Box Office Network*, 2006 WL 1004472, at *5)). Sezan declared:

> In my email sent on December 28, 2018 at 1:20 a.m., I deliberately copied Ms. Dozie because I wanted her to provide me with legal advice regarding legal issues implicated by AE's letter. I also copied Ms. Dozie in order to provide Ms. Dozie with information so that she could provide legal advice. After I requested that Ms. Dozie provide legal advice, Ms. Dozie responded to my request and provided legal advice; her response is reflected in a separate version of this email chain.

Sezan Decl. ¶ 9.[2] Although Dozie may well have responded at some point to Sezan, neither Sezan nor GE alludes to what legal issues or principles may have animated his request or Dozie's response, and the Court cannot accept his *ipse dixit* assertion that Dozie's advice was "legal" in nature, especially in light of Dozie's position as in-house counsel. *See MSF Holding, Ltd. v. Fiduciary Tr. Co. Int'l*, No. 03-CV-1818, 2005 WL 3338510, at *1 (S.D.N.Y. Dec. 7, 2005) (holding that e-mails from in-house counsel constituted business advice because counsel "never alluded to a legal principle in the documents nor engaged in legal analysis"); *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987) ("Th[e] burden is not, of course, discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be

---

[2] The Court notes some skepticism of the truth of Sezan's declaration on this point. The email was expressly directed to Caroline Ndungo, a business person, and asked only for answers to Strazik's questions. There is no hint in the text of the email that he was seeking legal advice, nor is there any explanation in his declaration why, if he were seeking legal advice from Dozie, he did not do so explicitly.

6

exposed." (quotation omitted)).  In any event, as with the December 20, 2018, email, Sezan's declaration—even assuming his email contained an implicit request for legal advice by virtue of him copying Dozie—does not show that his purported implicit request for legal advice was anything more than a whisper drowned out by their accounting treatment discussions.

### C. The January 31, 2019, Email

In the last clawed-back email thread da Costa sent the allegedly forged letters to GE's in-house counsel Brad Galvin with an overview of their origin.  *See* Danner Decl. Ex. 10.  Galvin, in turn, forwarded da Costa's email to a mix of business officers and corporate counsel, suggesting that they should send the letters to the Angolan government agency without da Costa's "commentary" (because, he wrote, it is "intra-GE commentary" although there is "nothing untoward in it.").

According to GE, Galvin's note provided legal advice on how best to communicate with the Angolan agency regarding issues that present legal risk for GE.  GE's Opp. at 19–21.  Because GE has produced no declaration or other evidence to support its position, the Court must rely on the content and context of the email thread alone.  Galvin was an in-house lawyer who appears to have offered a view about how strategically to communicate with an outside party.  Although Galvin's judgment could have been informed by his legal training, there is nothing in the text of the email to suggest that he was providing legal advice.  His advice could also have been driven by business or negotiating considerations.  That lack of clarity cuts against GE; the Court has no basis on which to find that "the predominant purpose of the communication" was to render legal advice.  *Cty. of Erie*, 473 F.3d at 420.

### II. GE's Categorical Privilege Log

GE's categorical privilege log has significant shortcomings.  *See* Danner Decl. Ex. 13.  There is little doubt that "[b]oth the Federal and Local Rules permit categorical privilege logs."

*Norton v. Town of Islip*, No. 04-CV-3079, 2017 WL 943927, at *8 (E.D.N.Y. Mar. 9, 2017) (citing *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 297 F.R.D. 55, 59 (S.D.N.Y. 2013) and Local Civ. R. 26.2(c)). That does not, however, obviate a party's obligation to provide "sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (quoting *Bowne of N.Y.C., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993)). A party withholding documents on the basis of privilege must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Because "Fed. R. Civ. P. 26 applies with the same force to a categorical log as it does to a traditional log that lists each document individually . . . a categorical privilege log is adequate if it provides information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege." *Auto. Club of N.Y.*, 297 F.R.D. at 59.

GE's privilege log descriptions are vague and repetitive, and the Court can discern no rhyme or reason behind its chosen groupings. Although GE's "Category Descriptions" purport to state the subject matter to which the documents relate, the vast majority state only, generically, that the documents are confidential internal documents between GE employees and in-house counsel "seeking or conveying legal advice" about the "on-sale contracts," the "Credit Facility Agreement," or "the AE-GE contracts." According to GE's cited guidance on categorical privilege logs—as well as common sense—a shared attribute true of all documents in a category

8

should bind the category together, *see* Park Decl. (Dkt. 55) Ex. A at 5, but the Court can discern no method or reason behind GE's decision to carve out the categories it did.[3]

As a result, GE's log does little to communicate the potential basis for its privilege assessments. There is likewise no way to judge whether the overinclusive standard GE applied to the three clawed-back emails pervades the rest of its privilege claims. The Court suspects it does, and there is evidence to support that suspicion: GE grouped the December 20, 2018, email (duplicatively produced in a redacted version) in a group with 230 document families, numerous authors and recipients, and the recurring vague description that they are "[c]onfidential communications among GE employees and GE in-house counsel seeking or conveying legal advice relating to the on-sale contracts and the Credit Facility Agreement." Danner Decl. Ex. 13 at 13. The Court is thus concerned that overbroad or otherwise unwarranted privilege determinations are hiding behind GE's groupings. The Court is confident that GE could have included more granular and informative categories, assuming that there was a legitimate basis to withhold the documents. GE is reminded that "[a] privilege log is not a mere administrative exercise. Its purpose is to ensure that a withholding party can justify a privilege designation." *BlackRock Balanced Capital Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-9367, 2018 WL 3584020, at *5 (S.D.N.Y. July 23, 2018).

## III. Remedy

As an initial matter, the Court must clarify the nature of AE's requested remedy. AE seeks an order compelling GE to produce the three clawed-back documents as well as all documents withheld on the basis of privilege. *See* AE's Mem. of Law (Dkt. 53) at 23–24. GE characterizes AE's requested relief as a "sanction," GE's Opp. at 22–23, but AE states

---

[3] Thus, it is no comfort that GE's privilege log contains 70 categories.

unequivocally that it "is not asking for a sanction," AE's Reply (Dkt. 60) at 9–10. Rather, AE is asking for relief for GE's failure to meet its burden under the law. *Id.*

This distinction is not academic. The standard governing when to waive a party's claims to privilege as a sanction differs from the standard determining when a party has failed to meet its burden to show privilege. A sanction would be appropriate if GE failed to comply with the applicable Federal Rules of Civil Procedure.[4] AE's requested relief, however, relies upon *Construction Products* in which the Second Circuit held that when a party does not provide sufficient information to support its privilege claims, a court may reject them; that is appropriate because that party, despite carrying the burden, has failed to "establish the essential elements of the privilege." *Constr. Prods. Research*, 73 F.3d at 473 (citations omitted). Indeed, a privilege log is only one vehicle for providing such information. A party may also offer "evidentiary submissions to fill in any factual gaps"—that is to say, the inadequacy of the privilege log alone is not the basis for relief, as it might be if AE were seeking sanctions. *Id.* (quoting *Bowne*, 150 F.R.D. at 474). GE's focus on sanctions is therefore misplaced, and the Court must assess what remedy is appropriate in light of GE's burden and this Court's findings.

The Court declines at this stage to outright reject all of GE's privilege claims as AE requests, although GE's obvious gamesmanship makes that a very tempting route. While GE's privilege log comes dangerously close to being an attempt to discharge its obligation through "conclusory or *ipse dixit* assertions," *Golden Trade. S.r.L. v. Lee Apparel Co.*, 90-CV-6291,

---

[4] *See* Fed. R. Civ. P. 26, Advisory Committee Notes ("To withhold materials without [notice under Rule 26(b)(5) is contrary to the rule, subjects the party to *sanctions* under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." (emphasis added)); *see also S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 157 (S.D.N.Y. 2014) ("[A] party's failure to comply with the requirements of Fed. R. Civ. P. 26(b)(5) or Local Civil Rule 26.2 may result in a waiver of privilege."); *McNamee v. Clemens*, No. 09-CV-1647, 2014 WL 1338720, at *1, n.1 (E.D.N.Y. Apr. 2, 2014) (noting that the "harshest of sanctions" could have been warranted for a deficient privilege log); *cf. Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 166 (2d Cir. 1992) ("[T]he failure to comply with [former Local Civil Rule 26.2] may result in a finding that the privilege has been waived.").

1992 WL 367070, at *5 (S.D.N.Y. Nov. 20, 1992) (quoting *von Bulow*, 811 F.2d at 146), the Court can tell that at least some of the withheld documents are likely actually privileged. Contrary to the parties in several cases AE cites, GE has not had "multiple opportunities" to assert privilege appropriately. *BlackRock*, 2018 WL 3584020, at *5; *see also S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 162 n.1 (S.D.N.Y. 2014); *McNamee v. Clemens*, No. 09-CV-1647, 2014 WL 1338720, at *4 (E.D.N.Y. Apr. 2, 2014).

Nor are the assertions in GE's privilege log as egregiously uninformative as those in the cases upon which AE primarily relies, where there was no hint of detail to "permit a judgment as to whether the document is at least *potentially* protected from disclosure." *Constr. Prods. Research*, 73 F.3d at 473 (quotation omitted) (emphasis added). The privilege log in *Construction Products* included inexplicable descriptions: "(a) 'Fax Re: DOL Findings' with comment 'cover sheet;' (b) 'Fax: Whistleblower article' with comment 'Self-explanatory;' (c) 'Letter Re: Customer Orders' with comment 'Re: Five Star Products;' (d) 'Summary of Enclosures' with comment 'Self-explanatory;' etc." *Id.* at 474. Similarly, the privilege log in *Blackrock* contained descriptions like "Fw:15Ga-1 Reporting [I]," "Missing Exception Reports—All Trustees-06-20-11.xls," "Trade Updated Investment Policy I," and "[s]preadsheet reflecting legal advice from unspecified in-house counsel regarding repurchase obligations." 2018 WL 3584020, at *2; *see also McNamee*, 2014 WL 1338720, at *4 (privilege log contained non-sensical descriptions such as "Re: Hi Joe"); *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) (privilege log was inadequate because it did "not identify which privilege is being asserted (attorney-client or work product)" and often did "not identify the parties to the communication"). Moreover, in *Blackrock*, the defendant "wait[ed] until a document [was] challenged to review whether its privilege designation [was] correct" and "frequently realize[d] that the privilege was improperly asserted" when challenged.

11

2018 WL 3584020, at *5.  The consequence of this was to "inappropriately shift[] the burden to [the plaintiff] to challenge a privilege assertion when [the defendant] should have established why a document was protected in the first place."  *Id.*  Thus, while the Court finds the reasoning and chosen remedy in *Blackrock* persuasive, GE's intransigence is not quite so egregious.

The Court therefore orders GE to re-review all of its privilege determinations under the correct "predominant purpose" standard articulated herein.  GE must also produce a revised privilege log.  Although AE has not requested a document-by-document list, the Court has lost confidence that GE will provide sufficient information regarding withheld documents to inform AE of the basis for its privilege calls.  While the Court may have decided otherwise were the task particularly burdensome, in this case GE has withheld only 1300 documents and 800 document families, and that number is sure to decrease.  *See Auto. Club of N.Y.*, 297 F.R.D. at 60 ("[T]he justification for a categorical log of withheld documents is directly proportional to the number of documents withheld.").  Should privilege disputes remain, the Court will consider *in camera* review.  *See Cicel (Beijing) Sci. & Tech. Co., Ltd. v. Misonix, Inc.*, 331 F.R.D. 218, 235 (E.D.N.Y. 2019) ("[G]iven the likelihood that a significant number of documents associated with the above-referenced privilege log entries are in fact privileged, the Court will not order Misonix to produce all such materials at this time. Instead, the Court directs Defendant to submit the documents in question for in camera review by this Court.").

## CONCLUSION

For the foregoing reasons, AE's motion to compel is GRANTED in part.  GE must immediately produce the three clawed-back documents.  GE must also re-review the documents listed in its privilege log according to the standard set forth in this Order and produce de-

designated documents and a revised, document-by-document privilege log no later than two weeks from entry of this Order.[5]

It is further ordered that the parties must re-file the sealed motion papers on ECF in public view no later than ten days from entry of this Order. If the parties wish to redact portions of the motion papers, they may do so via letter motion to the Court in accordance with the undersigned's Individual Rules.

**SO ORDERED.**

**Date: April 3, 2020**
       **New York, New York**

       **VALERIE CAPRONI**
       **United States District Judge**

---

[5] GE has spilled considerable ink throughout this matter reminding the Court that it is a third party to the foreign litigation at issue and complaining bitterly about the purportedly heavy costs and burdens of discovery imposed by the subpoena. The Court was skeptical of GE's complaints then, and now that skepticism is all but confirmed. GE's privilege claims to the three clawed-back documents have exposed the strategic underbelly of its litigation tactics. GE is warned that the Court is not amused by GE's tactics in this matter. Should those tactics persist, the Court will consider a full range of remedies and sanctions against it.