UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Aenergy, S.A. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | No. 1:19-mc-00542-VEC |

**DECLARATION OF TERESA S. PARK IN SUPPORT OF**
**RESPONDENT GENERAL ELECTRIC COMPANY'S**
<u>**OPPOSITION TO MOTION TO COMPEL**</u>

I, Teresa S. Park, declare the following in accordance with 28 U.S.C. § 1746:

1. I am an attorney at the law firm of Covington & Burling LLP ("Covington"), counsel to respondent General Electric Company ("Respondent" or "GE") in connection with the above-captioned matter (this "Proceeding"), and a member of the bar of this Court.

2. I submit this declaration in support of GE's Memorandum in Opposition to Petitioner Aenergy's ("AE's") Motion to Compel (the "Motion" or "Mot.") and to supplement, clarify, and correct certain points in the meet-and-confer summary in AE's Motion and accompanying declaration. The facts stated in this declaration are true to the best of my knowledge, information, and belief.

3. On December 28, 2019, I submitted a declaration in this matter regarding meet-and-confer discussions prior to that date. *See* Dkt. No. 31. This declaration, in contrast, focuses on meet-and-confer discussions since early January. I do not address every inaccuracy or mischaracterization in the Danner Declaration, Dkt. No. 54, in Support of AE's Motion, but instead focus on those most relevant to that Motion.

1

**GE's Production and Privilege Logs**

4. Since AE's initial 1782 application to this Court, AE has represented that its deadline for filing the Angolan appeal was January 13, 2020. *See* Dkt. No. 3 at 5. From November 2019, GE worked diligently to collect, process, review, and produce documents to meet as much of AE's production priorities as possible in advance of its January 13 deadline.

5. As part of its efforts to move forward quickly with the review and production, GE agreed to a broad set of search terms at AE's request. In agreeing to these terms, GE explained to AE that it believed the search terms were overly broad. *See, e.g.*, Jan. 6, 2020 Hr'g Tr. at 9:8-12 (advising that "[t]here are a number of what we think [are] overinclusive terms on a variety of different categories that is generating that difference, including, in certain places, what we feel is an overinclusive date range that's going to result in a lot of false positives . . . .").

6. Even after the filing of AE's Angolan appeal on January 13, GE continued to work diligently to review and produce responsive documents. Ultimately, GE produced over 60,000 pages of documents over the course of eleven productions, with its last production completed on February 8, 2020.

7. On January 16, 2020, I sent AE an example of the form of categorical privilege log GE planned to use in this matter. Danner Decl., Ex. 19, Park Email, Jan. 16, 2020, 9:33 PM (at 18); Ex. D (*see* ¶ 22 *infra*). On January 19, 2020, AE responded that "GE's format [for the categorical log] looks OK," although AE requested document-by-document logging for certain periods. Danner Decl., Ex. 19, Danner Email, Jan. 19, 2020, 1:15 PM (at 14).

8. GE provided AE with two privilege logs: a document-by-document log for the period of October 9-12, 2017, and a categorical privilege log encompassing all other time

periods.[1]

9. Completion of these productions and privilege logs within a short period of time involved significant time and resources. For example:

   a. Over 65,000 documents were reviewed for responsiveness as a part of the ESI review;

   b. GE produced or logged a total of approximately 6,500 documents, including production to AE of approximately 5,500 documents, and categorical logging of more than 1,300 withheld or redacted documents; and

   c. Thousands of hours were spent reviewing documents.

**GE's Meet and Confer Efforts Regarding Sufficiency of Production and Privilege Logs**

10. Since January 2020, even before GE had substantially completed its productions, AE raised a series of complaints relating to GE's document collection, review, production, and privilege logging accompanied by an expanding series of requests for information and supplemental document productions. Many of these requests have been based on purported "gaps" or low volume of documents in GE's production and privilege logging, pertaining to certain time periods that AE identifies as relevant.

11. GE worked promptly and in good faith to try to reach a resolution on AE's requests, including through numerous email exchanges and telephone conferences.

12. Although not obligated to do so, GE agreed to conduct supplemental document reviews and productions, including, for example, the custodial review and production of two additional document custodians.

---

[1] GE's categorical log provides more information than the example log. *Compare* Danner Decl, Ex. 13, *with* Ex. D to this declaration.

13. GE also provided numerous points of data sought by AE concerning the number of documents reviewed and produced by various categories, including specific data sets pertaining to particular custodians, or between particular custodians, or for particular time periods, as well as additional data concerning documents withheld on GE's privilege logs.

14. Throughout the meet-and-confer process, GE sought to understand and narrow the scope of the privilege-related issues in dispute. For example, on February 24, 2020, GE sought clarity about the scope of AE's privilege-related concerns, asking by email: "Are there other specific documents you intend to address in your motion or to cite as examples of deficiencies or potential deficiencies? If so, which documents are they?" *See* Danner Decl., Ex. 21, Park Email, Feb. 24, 2020, 3:24 PM (at 5). AE responded that the three documents they had identified were "examples of inconsistent redactions" that they intended to raise, but did not address whether any other documents might be raised. *Id.*, Danner Email, Feb. 24, 2020, 5:39 PM (at 5). GE again asked AE to confirm: "Are there any other specific documents that you intend to address in your motion?" *Id.*, Park Email, Feb. 25, 2020, 9:50 AM (at 4). AE responded that these were "examples of documents," and stated "[w]e intend to cite those and others like them." *Id.*, Danner Email, Feb. 25, 2020, 10:03 AM (at 2).

15. During the meet and confer process, AE never raised by email or telephone any of the following allegations that now appear in AE's motion to compel:

    a. that "any privilege claim GE would have" as to a particular document "must fail in view of the crime-fraud exception" (Mot. at 16);

    b. that although "AE believes that federal common law applies," "for certain purposes…[the Court should] look to foreign law," including a concept of "client representatives" under English law (Mot. at 22);

      c. that GE's privilege over legal advice regarding presidential approval requirements "is no longer 'confidential'" and is waived (Mot. at 23).

16. Among the information provided to AE in response to its requests, GE specifically informed AE "we think US law applies in the first instance, but that the documents would be privileged under any applicable law, including English law." Danner Decl., Ex. 21, Park Email, Feb. 24, 2020, 3:24 PM (at 5). AE responded, "We agree that U.S. federal-common law applies in the first instance." *Id.*, Danner Email Feb. 24, 2020, 5:39 PM (at 5).

17. AE also rejected efforts by GE to narrow the scope of issues in dispute prior to the filing of its motion. For instance, in an email dated February 24, 2020, I asked AE if it would "agree that if outside counsel was included on a communication, that you are not disputing any claim of privilege over those documents?" *Id.*, Park Email, Feb. 24, 2020, 3:24 PM (at 5). AE rejected this proposal, and instead responded by requesting that GE produce more information about GE's privileged communications. *Id.*, Danner Email, Feb. 24, 2020, 5:39 PM (at 5).

**Clawback of Privileged Documents**

18. On Thursday evening, Feb. 20, 2020, AE notified GE of three documents which had been produced without redactions, and which appeared to contain content that had been redacted in other produced documents. Danner Decl., Ex. 25, Danner Email, Feb. 20, 2020, 6:00 PM (at 1). Less than three business days later, on Tuesday morning, February 25, 2020, GE informed AE of its intent to claw back these documents as privileged. *See* Danner Decl., Ex. 21, Park Email, Feb. 25, 2020, 9:50 AM (at 3). GE sent a formal email demanding the return of these and related documents, and providing modified redacted versions, on Feb. 28, 2020. *See* ¶ 21 *infra*.

**Exhibits to GE's Memorandum In Opposition to AE's Motion**

19. Attached as **Exhibit A** is a true and correct copy of guidance materials published by the New York City Bar concerning treatment of categorical privilege logs, including a model privilege log (The Association of the Bar of the City of New York, Committee on State Courts of Superior Jurisdiction, *Guidance and a Model for Categorical Privilege Logs* (May 4, 2015), *available at* https://www2.nycbar.org/pdf/report/uploads/20072891-GuidanceandaModelforCategoricalPrivilegeLogs.pdf.

20. Attached as **Exhibit B** is a true and correct copy of a document produced by GE in this proceeding bearing beginning Bates number GE-TM-000201015.

21. Attached as **Exhibit C** is a true and correct copy of a letter dated February 28, 2020 to Scott Danner, and the attachments thereto.

22. Attached as **Exhibit D** is a true and correct copy of the example categorical privilege log that I sent to AE on January 16, 2020 (*see* ¶ 7 *supra*).

23. Attached as **Exhibit E** is a true and correct copy of an excerpt from the transcript of the hearings that took place in this matter on January 3, 2020.

24. Attached as **Exhibit F** is a true and correct copy of an excerpt from the transcript of the hearings that took place in this matter on January 6, 2020.

I declare on this 4th day of March, 2020, under penalty of perjury that the foregoing is true and correct.

Teresa S. Park